UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

| | |
|---|---|
| DARREN GILREATH, | CIVIL ACTION NO. 6:16-CV-96-KKC |
| Plaintiff, | |
| V. | **MEMORANDUM OPINION AND ORDER** |
| CSX TRANSPORTATION, INC., | |
| Defendant. | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on four motions in limine filed by Defendant CSX Transportation, Inc. ("CSXT"). (DE 99, 101, 105, 108). Plaintiff Darren Gilreath has filed responses (DE 120, 121, 123, 126) and this matter is now ripe for consideration.

I. **Background**

The relevant factual background of this case is set out more fully in the Court's opinion addressing the Parties' cross-motions for summary judgment. (DE 128). In short, Darren Gilreath was working as a switchman on a remote control locomotive at a CSXT railyard. He claims that, while tightening a hand brake using a brake stick, the tension in the brake unexpectedly and momentarily released before coming to a sudden stop. This caused him to feel a pop and jolt in his shoulder and pain in his left arm. Gilreath alleges that the incident caused his rotator cuff and labral tears, which have placed restrictions on his use of his left shoulder and upper arm. The Court has granted summary judgment for the Defendant on Plaintiff's Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51, *et seq*, negligence claim and Locomotive Inspection Act ("LIA"), 49 U.S.C. §§ 20701-20703, *per se* negligence claim.

1

The only remaining cause of action before the Court is Plaintiff's claim that the hand brake was inefficient in violation of the Safety Appliances Act ("SAA"), 49 U.S.C. §§ 20301-20306, constituting negligence *per se* under FELA.

**II. Analysis**

A. *Defendant's motion to exclude testimony of Plaintiff's liability expert*

Plaintiff has retained John David Engle Jr. as a liability expert. Engle has been employed by a Class 1 railroad, Norfolk Southern Railway Company, in various roles, including Superintendent of Air Brakes. Engle has provided a Preliminary Report (DE 74-5) and has been deposed by the Defendant (DE 74-4). Engle's opinion is that the hand brake was defective at the time of the incident and therefore inefficient.[1] (Engle's Rep. DE 74-5, at 11) ("The defective hand brake . . . was in violation of the Safety Appliance Act . . . at the time of the incident because it was not efficient."). He believes that the hand brake was defective because "[t]here was something in the hand brake, and the hand brake associated rigging that caused the brake to start tensioning up, and then releasing or becoming free, and then stopping again." (Engle's Dep. DE 74-4, at 44). The evidence that Engle relies on in support of opinion is "[t]he description by Mr. Gilreath and the fact that there are AAR Rules, and FRA Rules about preventing binding or fouling in the braking system . . . ." *Id.*

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

---

[1] Engle also intended to testify that CSXT was negligent for not training employees to inspect and identify a non-efficient hand brake and for not inspecting the railcar immediately after the incident occurred. This testimony related to Plaintiff's FELA negligence claim which has been dismissed.

2

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The rule reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), which charged judges with the responsibility to act as gatekeepers, excluding unreliable expert testimony. This gatekeeping role applies equally to scientific and technical expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). The language of Rule 702 creates three requirements for expert testimony to be admissible. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528 (6th Cir. 2008). First, the expert must be "qualified by knowledge, skill, experience, training or education." *Id.* at 529. Second, the expert's testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* And, third, the testimony must be reliable. *Id.* Testimony is reliable if it is "based on sufficient factors or data . . . is the product of reliable principles and methods; and the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d). Additionally, *Daubert* provided factors for courts to consider in evaluating reliability, which include "testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community." *United States v. Langan,* 263 F.3d 613, 621 (6th Cir. 2001) (citing *Daubert,* 509 U.S. at 593–94). Those factors, however, are non-exclusive and apply only "only where they are reasonable measures of the reliability of expert testimony." *In re Scrap Metal*, 527 F.3d at 529 (quoting *Gross v. Comm'r*, 272 F.3d 333, 339 (6th Cir. 2001)).

The Defendant does not dispute that Engle is qualified, based on his experience, to provide an opinion on the efficiency of hand brakes. Accordingly, the two issues before the

Court are whether Engle's opinion would assist the trier of fact and if his testimony is reliable.

1. *Engle's testimony is not reliable*

The relevant *Daubert* factors for assessing Engle's proposed testimony are if standards exist which control his methodologies operation and the acceptance of his methodology among hand brake inspectors. While Engle claims to have followed "a methodology commonly used by experts in [his] field" there is no evidence in Engle's deposition or report that this is the case. Engle's testimony is based entirely on Plaintiff's account of the incident. He acknowledges that he has not inspected the car at issue. While the inspection is not a part of Engle's methodology for assessing the hand brake, he admits that an inspection is "essential to 'know' the condition of the hand brake . . . and whether or not it was actually applying pressure to the brake shoes at the wheels as it should. *Id.* Thus, Engle has called his own methodology into question by admitting that he lacks the evidence necessary for him to make a proper opinion. Instead of relying on CSXT's inspection report, he criticizes it for lacking evidence as to how the hand brake was set and released, determined that it was applying and releasing properly, or how the brake chain was measured. (DE 74-5, at 7). Engle's opinion is based entirely on Gilreath's statements regarding the incident. The Court is unconvinced that relying solely on statements made by employees three years after an incident is an accepted methodology among railway brake experts for assessing hand brake efficiency.

The unreliability of Engle's methodology is also apparent in his failure to explain what caused the alleged defect. When asked during his deposition to explain what caused tension in the hand brake to build up and suddenly release, Engle was unable to give a clear answer. Instead, he repeatedly asserted that "whatever" in the system was defective caused the brake to slip. *See* (DE 105-1, at 28 ("[W]hatever in this braking system that was defective, binding, fouling or whatever happened . . . ."); *id.* at 32 (""[W]hatever that was in that system that

allowed it to start building tensioning, and then it free itself, became unstuck, unbound, however that happened . . . .")). When asked to further describe what caused the hand brake to slip, Engle stated that "I don't know that we know the answer to that at this time" because "there was not a proper inspection." *Id.* at 32. But since no additional inspections have been or could be conducted, Engle still lacks a reliable methodology for explaining what caused the hand brake to slip.

2. *Engle's testimony would not assist the trier of fact*

Evidence that a hand brake was inefficient in violation of the FSAA may be established in two ways. First, evidence may be offered that "establishes some particular defect." *Myers v. Reading Co.*, 331 U.S. 477, 483 (1947). Alternatively, "the same inefficiency may be established by showing a failure to function, when operated with due care, in the normal, natural, and usual manner." *Id.* (quoting *Didinger v. Pa. R. Co.*, 39 F.2d 798, 799 (6th Cir. 1930) (internal quotation marks omitted)). Because there was no visible defect, Plaintiff intends to prove the hand brake was inefficient under the second theory.

Engle's opinion is that, based on Gilreath's statements to him, the hand brake did not work properly, and was thus inefficient. This testimony would not assist the trier of fact. Engle admits that his testimony is based only on Gilreath's description of the incident and federal regulations. (DE 74-4, at 44). Those federal regulations, however, are not helpful in determining if the brake was efficient. In his expert report, Engle cites to two Federal Railroad Administration (FRA") regulations. First, he points to the requirement that railcars be equipped with "[o]ne efficient hand brake which shall operate in harmony with the power brake installed on the car." 49 C.F.R. § 231.1. That regulation provides no guidance as to whether the hand brake in this case was efficient. It merely implements the efficiency requirement of the SAA. Second, freight cars are required to be inspected for "[b]rakes that fail to release." 49 C.F.R. § 215.11. This regulation pertains to proper inspections. The

Defendant, however, is liable if the hand brake was inefficient, regardless of whether a proper inspection occurred. And there is no claim in this case that the hand brake failed to release. Engle's proposed testimony merely states his belief that Plaintiff's account of the incident is true. The jury is just as capable, and the proper body, to determine the credibility of Plaintiff's statements regarding the incident.

*B. Defendant's motion regarding Plaintiff's spoliation of evidence*

After the hand brake allegedly malfunctioned, Plaintiff continued to operate the hand brake. It was not until Plaintiff had completed assembling the outbound train that he reported the incident to his supervisor. Defendant claims that Plaintiff's failure to report the incident immediately violated CSXT's safety rules and spoiled CSXT's ability to defend itself in this action by preventing an inspection from being conducted at the time of the incident. Defendant asks the Court to offer a trial instruction informing the jury that Plaintiff spoiled evidence. For the reasons discussed below, this motion is denied.

A party seeking an adverse inference instruction based on spoliation of evidence has the burden of showing:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Beavan v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)). An obligation to preserve evidence exists when the party "should have known that the evidence may be relevant to future litigation . . . ." *Id.* (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)). A party has a culpable mental state when "evidence was destroyed knowingly, even if without intent to [breach a duty to preserve it], or *negligently*." *Id.* (quoting *Residential*

6

*Funding Corp.*, 306 F.3d at 108) (internal quotation marks omitted) (alteration in original).

A spoliation instruction is not warranted in this case. First, Defendant has not established that Gilreath should have known the hand brake would be the subject of future litigation. Defendant claims that such a duty was established by Rule 2251(A) of the CSX Safety Rules and Company Policies, which provided:

> When a hand brake is difficult to operate, defective, or damaged and does not function properly:
> - Do not operate the hand brake
> - Report the defective hand brake to the proper authority

(DE 108-6, at 17). These rules, however, appear to be primarily intended to promote safety, not to preserve evidence for litigation. Plaintiff also disputes that he was properly trained as to this requirement, noting that his supervisor testified that he lacked training on what to do if a hand brake slipped. Second, Defendant has not established that Gilreath had a culpable mental state. There is no evidence that Gilreath knew, or should have known, that continuing to work on the train would prevent an inspection relevant to future litigation from being performed. The most likely explanation for why Gilreath continued to operate the hand brake is simply that he intended to complete his job.

C. *Defendant's motion to preclude "but for" causation arguments*

Defendant has filed a motion to preclude Plaintiff from arguing to the jury that he may recover if CSXT's violation of the SAA was merely a "but for" cause of Gilreath's injury. Plaintiff has indicated that he only intends to argue that Defendant is liable if the violation "played a part—no matter how small—in bringing about the injury." *McBride v. CSX Transp. Inc.*, 564 U.S. 685, 705 (2011). Accordingly, this motion is moot.

D. *Defendant's omnibus motion in limine*

Defendant has also filed an omnibus motion *in limine* to preclude Plaintiff from introducing the following evidence:

1. Any reference to the history or congressional intent in enacting the FELA;

2. Evidence regarding Plaintiff's gross wage loss;

3. Reference to financial hardship of Plaintiff, his family members, or for loss of consortium;

4. Reference to unrelated accidents or conditions or the alleged "dangerousness" or "unsafe" nature of the railroad;

5. Reference to the case as a Workers' Compensation case or that this is Plaintiff's sole remedy;

6. Evidence as to the reduction in crew size or leases of rail lines;

7. Reference to the financial status of CSXT.

(DE 99). In his response, Plaintiff has indicated that he does not intend to introduce such evidence with two exceptions. First, Plaintiff intends to introduce evidence as to his gross wage loss to show how his net loss was calculated. Second, he intends to introduce evidence that he went to work for his wife's business after being denied employment with CSXT. Because this motion is largely moot, the Court will deny with leave for Defendant to reassert at trial. At trial, however, Plaintiff's counsel should approach the bench before introducing evidence of his gross wage loss or his work for his wife's business to permit Defendant to renew this motion.

### III. Conclusion

Accordingly, for the reasons set forth above, the Court **HEREBY ORDERS** that:

1. Defendant's motion *in limine* requesting an order excluding the testimony and report of John David Engle Jr. (DE 105) is **GRANTED**;

2. Defendant's motion *in limine* regarding Plaintiff's spoliation of evidence (DE 108) is **DENIED**;

3. Defendant's motion *in limine* requesting an order that precludes Plaintiff's counsel from arguing "but for" causation (DE 101) is **DENIED** as moot;

4. Defendant's omnibus motion *in limine* (DE 99) is **DENIED** as moot with leave for Defendant to reassert at trial. Plaintiff's counsel shall not introduce evidence of his gross wage loss or his work for his wife's business at trial without first approaching the bench.

5. Plaintiff's motion to reschedule the *Daubert* hearing for David Engle (DE 132) is **DENIED** as moot.

Dated February 21, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY